James W. McCLUNG, et al., Petitioners,

v.

Glenn WEATHERHOLTZ, Sheriff of Rockingham County, Virginia, Respondent.

Civ. A. No. 72-C-39-H.

United States District Court,
W. D. Virginia,
Harrisonburg Division.

Nov. 24, 1972.

---

John C. Lowe and F. Guthrie Gordon, III, Charlottesville, Va., for petitioner.

Gilbert W. Haith, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION

WIDENER,* Circuit Judge.

The petitioners were tried in the County Court of Rockingham County (a court not of record), convicted and fined $100 each for violation of § 18.1–173 of the Code of Virginia.[1] (The criminal trespass statute.) Upon appeal to the Circuit Court of Rockingham County (a court of record), they were tried by a jury, which found them guilty and fixed sentences as follows:

McClung — 9 months in jail and $1,000 fine

Rainey — 6 months in jail and $ 500 fine

Rochelle — 6 months in jail and $ 500 fine

The convictions in the Circuit Court were appealed to the Supreme Court of Virginia which affirmed the convictions. See Johnson v. Commonwealth, 212 Va. 579, 186 S.E.2d 53 (1972), cert. den. 407

---

* Sitting by designation as a United States District Judge.

1. § 18.1–173. Trespass after having been forbidden to do so.—If any person shall without authority of law go upon or remain upon the lands, buildings or premises of another . . . after having been forbidden to do so . . . by the owner, lessee, custodian or other person lawfully in charge thereof . . . he shall be deemed guilty of a misdemeanor. . . . "

Before the defendants were sentenced in the county court, Lewis H. Sword, Stephen B. Rochelle, Jay G. Rainey and certain others filed a complaint in the United States District Court for the Western District of Virginia. They sought a declaratory judgment that the College regulations, under which the application for the "vigil" was denied, were constitutionally invalid as overbroad and vague and as impermissible restraints on freedom of speech and assembly. The District Court granted the relief sought, Sword v. Fox, 317 F.Supp. 1055 (W.D. Va.1970) ; but on appeal the Fourth Circuit reversed, Sword v. Fox, 446 F.2d 1091 (4th Cir. 1971), cert. den. 404 U.S. 994, 92 S.Ct. 534, 30 L.Ed.2d 547 (1971).

The $100 fines were reduced by the County Court which imposed them.

U.S. 934, 92 S.Ct. 2458, 32 L.Ed.2d 817 (1972). The United States Supreme Court denied certiorari.

■ McClung, Rainey and Rochelle seek relief from this court by way of habeas corpus, alleging that:

"The imposition of a harsher sentence by the Circuit Court of Rockingham County is a denial of right to appeal from the Court not of record if the Court is allowed vindictively to impose a harsher penalty than was given in the court not of record."

In support of their allegation of vindictiveness, defendants state that the trial judge forced a jury trial upon them knowing full well that a rural jury would be harsh on demonstrating college students. Defendants did not want a jury trial, there being no factual issues in their estimation. Since petitioners have exhausted their state remedies as to this claim, it will be considered here.

The facts in this case are not at issue. Petitioners have presented, in their own words, only legal issues at every stage of the proceedings. The following facts are taken from the record of the trial court proceeding and the opinion of the Virginia Supreme Court. 28 U.S.C. § 2254; Hamric v. Bailey, 386 F.2d 390 (4th Cir. 1967). On April 24, 1970, a group of students at Madison College, a Virginia State institution, applied for permission to hold a "vigil" or protest gathering in Wilson Hall, the administration building of the college. The dean of student services denied the application because the "vigil" qualified as a demonstration in a college building. Nevertheless, students and at least one member of the faculty, including the petitioners in this case, gathered in Wilson Hall on the night of April 26 to hold the "vigil."

Wilson Hall is located in the central part of the campus. It serves as a combination academic and administrative office building. On Friday, August 24, Dr. James W. Fox, Dean of Student Services, was asked about the possibility of a demonstration in Wilson Hall on the following Sunday. Dr. Fox informed the Director of Student Activities that such an application could not be approved because it was against regulations. By Sunday, it appeared as though there was going to be a demonstration anyway. On Sunday evening, Dr. Fox went to see G. Tyler Miller, president of the university, and informed him of the developments. President Miller had already been in contact with Mr. Russell Weaver, the Rector of the Board of Visitors. Fox was informed that the agreed upon course of action was to warn the students to leave, secure the building, warn the students again to leave, and then have the violators arrested. During the course of events which followed, the students at Wilson Hall were advised that their presence and activities were unauthorized. They were advised that the building was being secured and that they were to leave immediately. The building was secured and the students were again asked to leave, this time upon the advice that if they failed to do so they would be in violation of the trespass statute. Some time elapsed, according to the record from fifteen to twenty-five minutes, and then the names of the violators were taken and arrests made. Even up to the time while the arrests were being made, students were given a chance to leave; in fact, the authorities pleaded with them to leave.

The defendants and others who did not leave the building were arrested and charged with trespass in violation of § 18.1–173 of the Code of Virginia. Defendants were convicted in the County Court and fined $100 each. Upon appeal to the Circuit Court of Rockingham County, they were tried by a jury which found them guilty and fixed sentences in excess of that given by the county court.

The disposition of defendants' claim, that the greater sentence given by the Circuit constitutes a denial of due process, is controlled by the recent decision of the Supreme Court in Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L. Ed.2d 584 (1972). Colten was charged

with disorderly conduct when he refused to move on when so directed by an officer. Colten was convicted by a county court in Kentucky and fined $10. Exercising his right to a trial *de novo* in a court of general jurisdiction, Colten "appealed," as the Kentucky rules word it, to the Circuit Court. He was convicted of disorderly conduct and this time fined $50. The United States Supreme Court rejected the precise claim which petitioners now urge here, and affirmed Colten's conviction.

The only issue here, therefore, is whether the Virginia procedure is sufficiently analogous to the Kentucky procedure to be governed by the *Colten* decision. The Supreme Court itself cited the Virginia system as an example of another state which has a two-tier system like that of Kentucky's for adjudicating less serious cases. *Colten*, 407 U.S. at 112, n. 4, 92 S.Ct. 1953. In Kentucky, those crimes classified under state law as misdemeanors may be charged and tried in an inferior court. If convicted after trial or on a guilty plea, however, he has a right to a trial *de novo* in a court of general criminal jurisdiction. The right to a new trial is absolute so long as appeal is made within the prescribed time limits. A defendant need not allege error in the inferior court proceeding. If he seeks a new trial, the Kentucky scheme contemplates that the slate be wiped clean. Prosecution and defense begin anew. A different judge (or jury) determines guilt and fixes the punishment in the superior court. (The description of the Kentucky scheme is found at pages 112, 113 of the *Colten* decision.) There is no need here to compare every element of the Virginia system with the Kentucky system because they are virtually identical. See §§ 16.1–129 through 16.1–136 of the Virginia Code; Gaskill v. Commonwealth, 206 Va. 486, 144 S.E.2d 293 (1965); Harbaugh v. Commonwealth, 209 Va. 695, 167 S.E.2d 329 (1969); Royals v. City of Hampton, 201 Va. 552, 111 S.E. 2d 795 (1960). Basically, the Virginia scheme provides for a trial *de novo* as a matter of right in a different court in which the whole prosecution starts anew. The question on the appeal is not whether the county court was in error, but whether the defendant is guilty or not guilty. And that matter is determined by an entirely new trial. The procedure is virtually identical to that in Kentucky, and this case is accordingly governed by the Supreme Court's decision in *Colten*.

In North Carolina v. Pearce, 395 U.S. 711, 725, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1968), the Supreme Court stated:

> "Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation *on the part of the sentencing judge*. [Italics added]

In *Colten*, the Supreme Court, in passing on Kentucky's two-tier scheme, which is a mirror image of that of Virginia, stated:

> "Our view of the Kentucky two-tier system of administering criminal justice, however, does not lead us to believe, and there is nothing in the record or presented in the briefs to show, that the hazard of being penalized for seeking a new trial, which underlay the holding of *Pearce*, also inheres in the *de novo* trial arrangement. Nor are we convinced that defendants convicted in Kentucky's inferior courts would be deterred from seeking a second trial out of fear of *judicial vindictiveness*. The possibility of vindictiveness, found to exist in *Pearce*, is not inherent in the Kentucky two-tier system." [Italics added.]

Thus, the Virginia two-tier system does not present the opportunity for the vindictive deterrence of appeal condemned in *Pearce*. See *Colten*, supra.

Nor does the petitioners' allegation of vindictiveness in fact on the part of the trial judge in the Circuit Court of Rockingham County withstand scrutiny. The jury, not the judge, fixed the sentence (which was less than the maximum). It is also worthy of note here that Virginia has rigidly adhered to the rule that mention of the action or the sentence imposed in the court not of record is reversible error. See Griffin v. Wilkerson, 335 F.Supp. 1272 (W.D.Va.1972); Mawyer v. Commonwealth, 203 Va. 898, 128 S.E.2d 433 (1962). So the jury was not informed of the results of the trial in the inferior court. The simple fact that the judge referred the case to a jury is no indication of vindictiveness, and no facts have been alleged to support this contention. In all probability, we may say that the judge in the court of record was aware of the sentence which was imposed in the inferior court. The jury, however, would not have known. This may or may not be why the court would not accept waiver of a jury trial. His manner of handling it, however, eliminated any chance that his prior knowledge would, intentionally or unintentionally, influence the sentence to be imposed. The method he chose insured fairness to the defendants. The court has carefully reviewed the entire record and specifically notes that there is no evidence of vindictiveness on the part of the court. The Virginia rule is the same as the federal rule in that the consent of the court is required to waive trial by jury. See Federal Rules of Criminal Procedure, Rule 23; compare Va.Const., Art. I, § 8. Both the federal and the state rules obviously contemplate that in some cases the court would decline to try a plea of not guilty without a jury, and it would be wholly illogical to infer vindictiveness on the part of a court which does nothing more than exercise the discretion conferred on it by law.

The Supreme Court has unanimously upheld the limitations on waiver of jury trial. Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965).

This reflects the view that trial by jury is the normal and, with occasional exceptions, the preferable mode of disposition of criminal cases. Under the federal rule, it has been held to be within the discretion of the trial court to determine whether to accept a waiver of jury trial. Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1940); Mason v. United States, 250 F.2d 704 (10th Cir. 1957). There seems to be no Virginia case law on point, but the explicit language of Va.Const., Art. I, § 8, vests in the trial court such discretion. It is clear to this court that such discretion was not abused by the trial court and the petitioners' allegation of vindictiveness is rejected.

While the Supreme Court cases have focused upon the possibility of vindictiveness on the part of the trial court in the second phase of the two-tier system, petitioners also allege vindictiveness on the part of the Commonwealth's Attorney. Even if this were a colorable legal claim, there is no evidence of such on the part of the Commonwealth's Attorney in this case. Petitioners argue that the prosecution's vindictiveness is illustrated by the fact that the Commonwealth's Attorney agreed to a fifty dollar fine in the lower court and then in the trial in the court of record he characterized the students' actions as a very serious criminal offense. In the first place, it should be noted that the *de novo* trial is a two edged sword. Just as a defendant is protected against having anything that happened in the lower court used against him in the *de novo* trial, he may not seek to incur any of the benefits. The fact that the prosecution may have agreed to a lesser penalty below is irrelevant in the *de novo* trial. These petitioners want the best of two worlds—an aspiration unwarranted by any of the Supreme Court decisions. Neither does the court see anything significant in the prosecution's statement in argument to the jury that the offense was a serious one. This was for the jury to accept or reject but it was their ultimate decision. It was certainly nei-

ther unduly inflammatory nor unfair argument. Even though it was said by way of argument, the court notes that the statement is essentially true—criminal trespass *is* a serious matter. The court sees nothing wrong with enthusiastic prosecution of criminal cases. It is the Commonwealth's Attorney's duty. Cf. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1934). The petitioners' position was that they had not done anything wrong. They could hardly expect the Commonwealth to simply agree. This case went to the jury following a full presentation of the evidence and thorough and enthusiastic argument by counsel for both sides. The court considers the actions of the Commonwealth's Attorney to be well within the bounds of legitimate prosecution in our adversary system of justice.

The records in this case disclose all the pertinent factual matters necessary for the determination of all of the petitioners' claims. No further hearing is required. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

An order is this day entered consistent with this opinion.